## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| RYAN UNTERKIRCHER and CATHERINE UNTERKIRCHER, Husband and Wife, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. CIV-21-897-D |
| STATE FARM FIRE AND CASUALTY COMPANY, a foreign for-profit corporation, | ) ) ) ) | |
| Defendant. | ) | |

## ORDER

Before the Court is Defendant State Farm Fire and Casualty Company's Motion for Summary Judgment [Doc. No. 28]. Plaintiffs Ryan and Catherine Unterkircher filed a response in opposition [Doc No. 45], and Defendant replied [Doc. No. 53]. The matter is fully briefed and at issue.

## BACKGROUND

Plaintiffs assert two causes of action against Defendant: 1) breach of contract; and 2) breach of the duty of good faith and fair dealing. The causes of action relate to Defendant's denial of Plaintiffs' claim under their homeowners' insurance policy. Plaintiffs initially filed this action in state court, and Defendant timely removed the case to federal court based on diversity jurisdiction under 28 U.S.C. § 1332(a).

Defendant seeks summary judgment in its favor with respect to both causes of action. It argues that Plaintiffs' insurance claim was properly adjusted, so it has no

contractual or tort liability. Alternatively, Defendant seeks partial summary judgment on Plaintiffs' bad faith claim on the ground that a reasonable and legitimate coverage dispute exists.

## UNDISPUTED FACTS

Plaintiffs own a home located at 1317 Olde North Place, Edmond, Oklahoma 73084 (the "Property"). The Property was built in 1985, and its roof was last replaced in October of 2012. The Property was insured with Defendant under policy number 36-10K1-53C (the "Policy"). The Policy was effective from July 8, 2019, through July 8, 2020.

The Policy required Defendant to "pay for accidental direct physical loss to the property described in Coverage A, unless the loss [was] excluded or limited" under the Policy. Def.'s Mot. Summ. J., Ex. 7 at 24. The Policy did not cover "wear, tear, decay, marring, scratching, deterioration, inherent vice, latent defect, or mechanical breakdown." *Id.* at p. 25. As for covered losses, Defendant was required to pay "only that part of the amount of the loss that exceeds the deductible amount shown in the Declarations." *Id.* at 15. The Policy's deductible was $2,650.

On August 18, 2020, Plaintiffs submitted a claim under the Policy for hail damage to the Property's roof, gutter, and vents, asserting a date of loss of April 28, 2020. After submitting the claim, Plaintiffs engaged American Standard Construction to inspect the Property. The inspection occurred on either August 20, 2020, or August 21, 2020. Because

Plaintiffs did not initially obtain a damage estimate from American Standard, Defendant did not have any third-party estimates at the time its performance was requested.[1]

Defendant assigned external adjuster Leonard Perinn to inspect the Property for covered losses. While inspecting the Property, Mr. Perrin took approximately 92 photos, which were uploaded to the claim file. Ultimately, Mr. Perinn "[f]ound no hail damage to the roof shingles or soft metals." Def.'s Mot. Summ. J., Ex. 8 at 6. Mr. Perinn did discover hail damage to the front and rear window beading, and thereafter prepared an estimate for covered damages under the Policy. The replacement cost value of the estimated repairs was $219.92. On September 17, 2020, Mr. Perinn sent a letter to Plaintiffs explaining that the evaluation of their claim was complete, and that Defendant was unable to make a payment on the claim because the estimated loss did not exceed the Policy's deductible. Although the letter invited Plaintiffs to call with any questions or for further assistance, there was no communication between Plaintiffs and Mr. Perinn after the letter was sent.

On January 21, 2021, Plaintiffs hired Coppermark Public Adjusters to represent them in connection with their claim under the Policy. Over the next month, Defendant and Coppermark exchanged documents and information related to the Policy and Defendant's determinations surrounding Plaintiffs' claim.

On April 21, 2021, Plaintiffs signed a sworn statement proof of loss in connection with their claim. In it, Plaintiffs claimed that the date of loss was April 28, 2020, and that the full cost of repair or replacement of the allegedly damaged fixtures was $41,588.45,

---

[1] American Standard's damage estimate has since been produced during the course of this litigation.

which resulted in an actual cash value claim of $38,938.45. This amount matches an estimate dated March 6, 2021, from GPS Loss Consulting.[2] Although Coppermark did not physically inspect the Property, it used the photos taken by GPS Loss Consulting to determine whether the observed damage was covered under the Policy. On April 28, 2021, Plaintiffs filed a pro se petition in small claims court in the District Court of Oklahoma County.[3]

On May 18, 2021, Defendant received in excess of 163 pages of documents from Coppermark which included the GPS Loss Consulting estimate, Plaintiffs' sworn proof of loss, and pictures from GPS Loss Consulting's inspection of Plaintiffs' home. The next day, Defendant's claim specialist Janice Shed and team manager Jaqueline Draper reviewed and analyzed (1) the documents from Coppermark; (2) an Accuweather hail report; and (3) the initial estimate prepared by Mr. Perinn. Ms. Shed and Ms. Draper both concluded that there was no hail damage to the roof shingles or valley metals warranting coverage under the Policy.[4] Ms. Shed and Ms. Draper each provided commentary in the claim file as to why they disagreed with Coppermark's conclusion.

---

[2] Coppermark engaged GPS Loss Consulting to photograph the areas of the Property that were allegedly damaged and provide an estimate to replace and/or repair those areas. GPS Loss Consulting's final estimate contemplated a replacement of the roof, garage doors, gutters, and other items. GPS Loss Consulting has since "pull[ed] out of Oklahoma." Def.'s Mot. Summ. J., Ex. 5 at 12. It is unclear whether the individual that inspected the Property for GPS Loss Consulting was trained to determine whether hail damages had occurred.

[3] Plaintiffs later moved to transfer the case to the regular civil docket and filed a first amended petition, through counsel, on August 18, 2021.

[4] Ms. Draper did determine that there was hail damage to a rain cap, and that this needed to be added to the initial estimate. Defendant updated its estimate to reflect this damage, increasing the replacement cost value of the claim to $663.58, which was still below the $2,650 Policy deductible.

Defendant sent Plaintiffs a letter dated May 21, 2021, which noted that there was not any hail damage to the shingles or roofing components. Rather, Defendant stated that the photos showed evidence of wear and tear, weathering, and deterioration. Coppermark did not request a second inspection of the Property on behalf of Plaintiffs.

## STANDARD OF DECISION

Summary judgment is proper "if the movant shows there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id.* at 255. All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Id.* If a party who would bear the burden of proof at trial lacks sufficient evidence on an essential element of a claim, then all other factual issues regarding the claim become immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Id.* at 322-23. If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *see also Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir.1998). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see* Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials,

but may consider other materials in the record." Fed. R. Civ. P. 56(c)(3); *see Adler*, 144 F.3d at 672. The court's inquiry is whether the facts and evidence of record present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## DISCUSSION

### I. Bad Faith Claim

Defendant moves for summary judgment with respect to Plaintiffs' bad faith claim. Under Oklahoma law, an insurer has an implied duty to deal fairly and act in good faith toward its insured, and the violation of that duty gives rise to an action in tort. *Christian v. Am. Home Assurance Co.*, 577 P.2d 899, 904 (Okla. 1977). To succeed on a bad faith claim, a plaintiff must prove four elements: "(1) claimant was entitled to coverage under the insurance policy at issue; (2) the insurer had no reasonable basis for delaying payment; (3) the insurer did not deal fairly and in good faith with the claimant; and (4) the insurer's violation of its duty of good faith and fair dealing was the direct cause of the claimant's injury." *Ball v. Wilshire Ins. Co.*, 221 P.3d 717, 724 (Okla. 2009).

The "critical question" in this analysis "is whether the insurer had a good faith belief, at the time its performance was requested, that it had a justifiable reason for withholding . . . payment under the policy." *Id.* at 725 (internal quotation omitted); *see also Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1093–94 (Okla. 2005) ("A central issue in any analysis to determine whether breach has occurred is gauging whether the insurer had a good faith belief in some justifiable reason for the actions it took or omitted to take that are claimed violative of the duty of good faith and fair dealing."). Thus, "[i]f there is a

legitimate dispute concerning coverage or no conclusive precedential legal authority requiring coverage, withholding or delaying payment is not unreasonable or in bad faith." *Ball*, 221 P.3d at 725. Under this standard, an insurer does not act in bad faith by disagreeing with an insured regarding coverage or the amount of loss or by resorting to a judicial forum. *Christian*, 577 P.2d at 905; *see also Bailey v. Farmers Ins. Co.*, 137 P.3d 1260, 1264 (Okla. Civ. App. 2006) ("Insurers are free to make legitimate business decisions (and mistakes) regarding payment, as long as they act reasonably and deal fairly and in good faith with their insureds.").

Under the undisputed facts and as a matter of law, the Court concludes that Defendant's conduct cannot reasonably be perceived as tortious. Defendant initially denied Plaintiffs' claim after external adjuster Leonard Perinn—who  inspected the Property for covered losses—concluded that there was "no hail damage to the roof shingles or soft metals." Def.'s Mot. Summ. J., Ex. 8 at 6. Mr. Perrin detailed his findings in a letter to Plaintiffs and encouraged them to call should they "have any questions or need further assistance." *Id.* at Ex. 12. Plaintiffs never followed up with Mr. Perinn regarding his determination.

Four months later, Plaintiffs hired Coppermark to represent them in connection with their claim. Coppermark never inspected the Property on Plaintiffs' behalf, but did engage GPS Loss Consulting to photograph the areas of the Property that were allegedly damaged. After reviewing these photos, Coppermark concluded that the alleged damages were covered under Plaintiffs' policy. It then provided Defendant with the photographs taken by GPS Loss Consulting, an estimate from GPS Loss Consulting that contemplated a

replacement of the roof, garage doors, gutters, and other items,[5] and Plaintiffs' sworn proof of loss.

A claim specialist for Defendant, Janice Shed, reviewed Coppermark's submissions, as well as an Accuweather hail report and Mr. Perinn's initial estimate. She detailed her analysis in the claim file and concluded that "[p]hotos/file notes in claim support overall claims decision and photos do not illustrate new information that warrants a 2nd inspection." Def.'s Mot. Summ. J., Ex. 8 at 2. Defendant's team manager, Jacqueline Draper, also reviewed the information provided by Coppermark, as well Mr. Perrin's photos and estimate, and determined "[t]he photos of the shingles do not illustrate hail damage. The damage appears to be wear/tear and granule loss." *Id.*

The crux of Plaintiffs' argument is that Defendant disagreed with Coppermark regarding the cause of the alleged damages to the Property's roof. Defendant's decision to deny Plaintiffs' claim is based on the analysis of an external adjuster, claim specialist, and team manager. In arriving at its decision, Defendant considered the photos from Mr. Perinn's initial inspection, GPS Loss Consulting's photos, an Accuweather hail report, and the estimate from GPS Loss Consulting.

Plaintiffs point out that "[t]he investigation of a claim may in some circumstances permit one to reasonably conclude that the insurer has acted in bad faith. This is particularly true if the manner of investigation suggests that the insurer has constructed a sham defense

---

[5] Plaintiffs are unaware whether the individual who inspected the Property for GPS Loss Consulting was trained to determine whether hail damages had occurred. GPS Loss Consulting has since "pull[ed] out of Oklahoma." Def.'s Mot. Summ. J., Ex. 5 at 12.

to the claim or has intentionally disregarded undisputed facts supporting the insured's claim." *Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1442 (10th Cir. 1993). But these circumstances are not present here. As detailed above, it is undisputed that several of Defendant's representatives—after reviewing every piece of information concerning Plaintiffs' claim—arrived at the same conclusion: Plaintiffs' claim was not covered under the Policy.

Plaintiffs fail to identify any additional steps—aside from arriving at a conclusion that they were entitled to coverage under the Policy—that Defendant should have taken to ensure a reasonable investigation. A second inspection of the Property was never requested, and in fact, Coppermark never physically inspected the Property on Plaintiffs' behalf. Under the current record, Plaintiffs have failed to reveal any other evidence that Defendant should have considered in making its coverage determination, and thus have failed to show that "a more thorough investigation would have produced relevant information that would have delegitimized the [Defendant's] dispute of the claim." *Bannister v. State Farm Mut. Auto. Ins. Co.*, 692 F.3d 1117, 1128 (10th Cir. 2012)

Thus, it is evident that a legitimate dispute concerning coverage exists. Although such a "legitimate dispute as to coverage [cannot] act as an impenetrable shield against a valid claim of bad faith," Plaintiffs have failed to "present[] sufficient evidence reasonably tending to show bad faith or unreasonable conduct." *See Vining v. Enterprise Fin. Grp., Inc.*, 148 F.3d 1206, 1214. Under the current record, the Court concludes that Defendant's withholding of payment is due to a legitimate dispute concerning coverage and "is not unreasonable or in bad faith." *Ball*, 221 P.3d at 725; *see also Bailey v. Farmers Ins. Co.*,

137 P.3d 1260 ("Insurers are free to make legitimate business decisions (and mistakes) regarding payment, as long as they act reasonably and deal fairly and in good faith with their insureds."). Accordingly, summary judgment is granted to Defendant on Plaintiffs' bad faith claim. Having found for Defendant on Plaintiffs' bad faith claim, the Court finds that Plaintiffs' claim for punitive damages is moot as a matter of law.

## II. Breach of Contract Claim

Defendant also moves for summary judgment on Plaintiffs' breach of contract claim. It argues that there is "no admissible evidence demonstrating that alleged damages to [Plaintiffs'] Property was caused by hail or another covered loss under the Policy." Def.'s Mot. Summ. J. at 18. Plaintiffs argue that photographic evidence, coupled with the reports from American Standard and GPS Loss Consulting, prevents the Court from entering summary judgment in Defendant's favor, as a genuine dispute of material fact exists.

Under Oklahoma law, the party asserting coverage bears the burden to establish a claim is within the scope of coverage. *Okla. Sch. Risk Mgmt. Tr. v. McAlester Pub. Schs.*, 457 P.3d 997, 1002 (Okla. 2019). "In Oklahoma, unambiguous insurance contracts are construed, as are other contracts, according to their terms." *Max True Plastering Co. v. U.S. Fid. & Guar. Co.*, 912 P.2d 861, 869 (Okla. 1996).

Based on the current summary judgment record, the Court finds that a genuine dispute of material fact exists regarding whether Plaintiffs suffered damages covered under the Policy. Plaintiffs have provided extensive photographic evidence allegedly indicating "accidental direct physical loss," specifically, physical loss caused by hail, wind, or wind-

driven debris.  On the current record, the Court is unable to conclude that this issue is "so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. Thus, the Court must deny Defendant's motion for summary judgment regarding Plaintiffs' breach of contract claim.

## CONCLUSION

In summary, Plaintiffs have failed to present evidence sufficient to create a material, factual dispute regarding their claim that Defendant breached its duty of good faith. Whether Defendant has satisfied its contractual obligations regarding Plaintiffs' claim under their Policy remains an issue to be determined.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment [Doc. No. 28] is **GRANTED** in part and **DENIED** in part as set forth herein.

**IT IS SO ORDERED** this 14th day of November, 2022.

TIMOTHY D. DeGIUSTI
Chief United States District Judge